SADMIRA RAMIC, ESQ.
Nevada Bar No.: 15984
CHRISTOPHER M. PETERSON, ESQ.
Nevada Bar No.: 13932
**AMERICAN CIVIL LIBERTIES
UNION OF NEVADA**
4362 W. Cheyenne Ave.
North Las Vegas, NV 89032
Telephone: (702) 366-1226
Facsimile: (702) 830-9205
Email: ramic@aclunv.org
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| DAWNYELL FLYNN, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF NEVADA ex rel. NEVADA DEPARTMENT OF CORRECTIONS, a public entity of the State of Nevada;[1] DONALD BURSE, an individual; JAMES DZURENDA, director, in his official capacity; and Doe Nevada Department of Corrections Employees 1 – 10, in their individual and official capacity.<br><br>Defendant(s). | Case No.: 2:22-cv-01753-JAD-NJK<br><br><br>**FIRST AMENDED COMPLAINT (JURY TRIAL DEMANDED)**<br><br>**ARBITRATION EXEMPTION CLAIMED**: EQUITABLE AND DECLARATORY RELIEF REQUESTED |

---

[1] NRS 12.105   State and local governmental agencies may be sued without naming members of their governing bodies; service. Any political subdivision, public corporation, special district, or other agency of state or local government which is capable of being sued in its own name may be sued by naming it as the party without naming the individual members of its governing body in their representative capacity. In addition to any other method that may be provided by statute or rule of court, service may be made upon the clerk or secretary of the political subdivision, corporation or agency.

## COMPLAINT

COMES NOW Plaintiff, DAWNYELL FLYNN, by and through counsel Sadmira Ramic, Esq. and Christopher M. Peterson, Esq., of the American Civil Liberties Union of Nevada, and alleges as follows:

## I.    INTRODUCTION

The Nevada Department of Corrections and Florence McClure Women's Correctional Center, due to a failure to implement preemptive policies, allowed for the sexual assault of prison inmates by prison staff. The Nevada Department of Corrections and Florence McClure Women's Correctional Center prison officials were aware of a substantial risk of sexual assaults and created an environment within the prison, which provided the opportunity for Donald Burse to commit these sexual assaults. Their actions violated Ms. Flynn's rights under the Eighth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983 and resulting in the infliction of emotional distress, battery, and unlawful imprisonment as defined under Nevada law. Plaintiff is seeking damages and injunctive and declaratory relief.

## II.    PARTIES

1.    Plaintiff, DAWNYELL FLYNN, is, and was at all times relevant herein, a resident of the State of Nevada, County of Clark, who was and continues to be incarcerated at the Florence McClure Women's Correctional Center.

2.    Defendant, THE STATE OF NEVADA, DEPARTMENT OF CORRECTIONS, is the governmental agency in the State of Nevada tasked with overseeing and operating all prisons located in the state, including Florence McClure Women's Correctional Center.

3.    Defendant, DONALD BURSE, is, and was at all times relevant herein, a resident of the State of Nevada, County of Clark, and was, at the time relevant to this complaint, employed

by the Nevada Department of Corrections as an institutional chaplain for Florence McClure Women's Correctional Center.

4. Defendant, JAMES DZURENDA, is, and was at all times relevant herein, a resident of the State of Nevada, and serves as the Director of the Nevada Department of Corrections. He is sued in his official capacity.

5. Defendants DOES 1 – 10, are unknown employees, staff, contractors, or agents of the Nevada Department of Corrections, along with those acting in concert with them, who were: 1) responsible for hiring, supervising, and monitoring Donald Burse; 2) tasked with developing and implementing NDOC's policies and procedures on prevention, response, and elimination of sexual assaults within prisons; and 3) aware of the risk of sexual assaults within FMWCC and deliberately chose to ignore it.

6. At all relevant times herein, all Defendants acted under color of state law, and all individual Defendants were acting within the scope of their employment.

### III.    JURISDICTION AND VENUE

7. Plaintiff, Dawnyell Flynn, filed her Complaint with the Eighth Judicial District Court, Clark County, Nevada (A-22-856144-C) on July 29, 2022.

8. NDOC Defendants filed their Notice of Removal [ECF No. 1] with the United States District Court, District of Nevada (2:22-cv-01753) on October 19, 2022.

9. This Court has original jurisdiction pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343(a)(3), and 28 USC §1343(a)(4) as this is a question under the Eighth Amendment of the U.S. Constitution, brought pursuant to 42 U.S.C. §1983.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants operate in Clark County, Nevada.

### IV.    <u>EXHAUSTION</u>

11.     Plaintiff, DAWNYELL FLYNN, has exhausted all administrative remedies available to her as required under 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act (PLRA).

### V.    <u>STATEMENT OF FACTS</u>

**A. As to Defendant Donald Burse**

12.     Defendant, Donald Burse ("Mr. Burse"), was employed by the Nevada Department of Corrections ("NDOC") is an institutional chaplain for Florence McClure Women's Correctional Center ("FMWCC").

13.     At the same time, Plaintiff, Dawnyell Flynn ("Ms. Flynn") was, and is currently, serving a sentence at FMWCC.

14.     Around June or July of 2020, Mr. Burse began to frequent the dorm where Ms. Flynn was housed to religiously counsel her.

15.     What began as a casual conversation with Mr. Burse regarding Ms. Flynn's religion quickly turned into inappropriate comments made by Mr. Burse about Ms. Flynn's body and sexual acts that he would like to perform on Ms. Flynn.

16.     During their conversations, Mr. Burse indicated to Ms. Flynn that he would obtain a bible for her.

17.     Sometime around August of 2020, Mr. Burse called for Ms. Flynn to come to his office, located inside the chapel of the prison.

18.     Ms. Flynn went to his office under the belief that Mr. Burse would give her a bible as they previously discussed.

19.     When Ms. Flynn arrived, Mr. Burse was the only one in the chapel.

20.    Upon information and belief, the chapel and Mr. Burse's office are not monitored in any form.

21.    Mr. Burse began the conversation by asking Ms. Flynn if she was wearing a wire.

22.    When Ms. Flynn confirmed that she was not, Mr. Burse began to discuss his abilities to obtain certain items for Ms. Flynn if she would perform sexual acts on him and allow him to perform sexual acts on her.

23.    Mr. Burse then rose from his chair, walked over to Ms. Flynn, and made her unzip her pants.

24.    Mr. Burse sexually assaulted Ms. Flynn by placing his hand inside her pants and touching her vagina.

25.    Shortly after this sexual assault, Mr. Burse again called for Ms. Flynn to come to his office.

26.    Ms. Flynn was under the belief that Mr. Burse had the items he had promised her.

27.    By the time Ms. Flynn reached the chapel, Mr. Burse was waiting for her outside the door of the chapel.

28.    Mr. Burse escorted Ms. Flynn into his office and locked the door behind him.

29.    Mr. Burse commanded Ms. Flynn to undress and sit on his desk.

30.    Mr. Burse then performed sexual acts on Ms. Flynn.

31.    Fearful, uncomfortable, and wanting to put an end to her sexual assault, Ms. Flynn told Mr. Burse that she heard someone coming.

32.    When Mr. Burse stopped to check the door, Ms. Flynn quickly put her clothes on and tried to leave the room.

33. However, Mr. Burse grabbed Ms. Flynn from behind and continued the assault by placing his hand inside her shirt and touching her breast while using the other hand to touch her vagina.

34. While holding Ms. Flynn from behind, Mr. Burse rubbed his genitals on her buttocks.

35. Ms. Flynn was eventually able to pull away from Mr. Burse.

36. Before Ms. Flynn was able to exit the office, Mr. Burse threatened her and warned her not to tell anyone about what occurred.

37. On February 4, 2021, a criminal investigator for the Nevada Office of the Inspector General interviewed an individual in custody at FMWCC regarding an unrelated matter.

38. During the interview, the individual reported that Mr. Burse had sexually assaulted Ms. Flynn.

39. The criminal investigator subsequently conducted interviews with Ms. Flynn between February 2021 and December 2021 regarding the sexual assaults.

40. Ms. Flynn provided details of the sexual assaults to the criminal investigator.

41. Ms. Flynn filed a grievance on August 10, 2021, with the prison describing these two incidents.

42. The grievance was initially denied despite an ongoing investigation being conducted by the Inspector General's Office.

43. Ms. Flynn continued to file grievances in relation to the sexual assaults.

44. On or about February 2022, Ms. Flynn received a notice that her grievance was substantiated and forwarded to the Inspector General's Office for review.

45. Mr. Burse was terminated from his position as a chaplain.

46.    As of May 19, 2022, the Nevada Attorney General's Office has filed three felony counts against Burse: two felony counts of Sexual Abuse of Prisoner by an Employee and one felony count of Unauthorized Custodial Conduct by Employee.

47.    The criminal case is currently ongoing under case number 22-CR-022659 in the Las Vegas Justice Court.

**B. As to all other Defendants**

48.    The Nevada Department of Corrections has a series of administrative regulations that govern the operations of its facilities, including prevention, detection, and monitoring of sexual misconduct.

49.    Per Administrative Regulation (AR) 421.05, all employees must receive training on the Department's zero-tolerance policy for sexual abuse and sexual harassment.[2]

50.    Training is required for new employees, and every two years subsequently thereafter.

51.    The PREA Staff Training identifies isolated areas as "common places where sexual violence can occur." *See* August 2019 State of Nevada Department of Corrections Pre-service Staff Training, slide # 24, attached hereto Exhibit 1.

52.    The training specifically identifies the chapel, in addition to the kitchen and work areas, as isolated areas in which it is common for sexual violence to occur. Ex.1.

---

[2] Nev. Dep't of Corrections, *Prison Rape Elimination Act*, Admin. Reg. 421, https://doc.nv.gov/uploadedFiles/docnvgov/content/Meetings/2022/Exhibit%2014a%20AR%20421.pdf (last visited Sep. 27, 2023).

53.     As such, at all relevant times herein, officers, and other NDOC personnel, knew that employee misconduct in the chapel or other similarly unsupervised areas of the prison was longstanding, well documented, or expressly noted by prison officials in the past.

54.     Per AR 421, data collection regarding sexual assaults and sexual harassment within NDOC facilities is required in support of internal audits.[3]

55.     Such data collection is partly reflected in NDOC's Annual PREA reports.

56.     NDOC's Annual PREA Report for the 2020 calendar year indicates that in the three years preceding the sexual assaults of Ms. Flynn, NDOC recorded a total of 135 allegations of staff on inmate sexual abuse. *See* 2020 State of Nevada Department of Corrections PREA Annual Report, p.7, attached hereto Exhibit 2.

57.     Of the 135 reported allegations of staff on inmate sexual abuse, 5 were investigated and determined to have occurred, 86 were investigated and produced insufficient evidence to make a final determination as to whether the allegations occurred, and 44 were investigated and determined to not have occurred. Ex. 2, p.7.

58.     Of the 135 reported allegations of staff on inmate sexual abuse, 20 of them occurred at FMWCC. Ex. 2, p.10.

59.     Per AR 421.12(4), NDOC must take a proactive approach regarding the prevention and detection of any type of sexual contact, including a written report after every staff on inmate sexual abuse allegation that determines whether NDOC should change any policies or practices to better prevent sexual abuse, whether physical barriers may have enabled the abuse, and whether additional monitoring technology should be deployed to increase staff supervision.[4]

---

[3] Admin. Reg. 421, *supra* note 2.
[4] *Id.*

60.    Despite the 2020 Annual PREA Report and its knowledge that the chapel is a common place for sexual violence to occur, NDOC and its staff took no steps to minimize the risk to Ms. Flynn, and other inmates, of sexual assault.

61.    A PREA audit of FMWCC occurred on January 26, 2022, a little over a year after Ms. Flynn was sexually assaulted. *See* January 26, 2022, PREA Facility Audit Report, attached hereto Exhibit 3.

62.    The audit showed 16 allegations of staff on inmate sexual abuse in the 12 months preceding the audit. Ex. 3, p.5.

63.    During the audit, the Warden on FMWCC indicated that they "consider areas where there have been PREA allegations [and] places that are isolated" when determining where to place additional monitoring technology. Ex. 3, p.35.

64.    Upon information and belief, no form of supervision, including camera installations, were placed inside the chapel or Mr. Burse's office to monitor interactions between employees and inmates inside the chapel even though NDOC specifically identified the chapel as an isolated area where sexual assaults are common.

65.    Section 5(A) of NDOC's Religious Practice Manual states that the chaplain will assist inmates in the practice of their beliefs by scheduling religious services pursuant to Section 5(B) of the manual. *See* September 5, 2017, Nevada Department of Corrections Religious Practice Manual, p.6, attached hereto Exhibit 4.

66.    Section 5(B)(1) of the Religious Practice Manual requires that the schedule for the use of the chapel be prepared by the chaplain and approved by the Warden/designee and provided to the Deputy Director as requested. Ex. 4, p.7.

67.    Section 5(B)(1)(b) of the Religious Practice Manual states that "safety and security is a priority in scheduling religious activities." Ex. 4, p.8.

68.    Upon information and belief, such approval was not sought by Mr. Burse to summon Ms. Flynn to his office located in the chapel under the guise to provide her a bible.

69.    Upon information and belief, such approval was not sought by Mr. Burse to summon Ms. Flynn to his office located in the chapel the second time he sexually assaulted her.

70.    NDOC permitted Mr. Burse to be left alone with Ms. Flynn despite him failing to seek approval to provide religious services to her inside his office located in the chapel.

71.    NDOC and its employees failed to inform Ms. Flynn of the dangers of possibly being sexually assaulted in the chapel despite its knowledge pursuant to the aforementioned PREA training that such a location was a common place where sexual violence can occur.

72.    Upon information and belief, at all relevant times herein, NDOC and its employees knew that Mr. Burse had sexually assaulted other inmates and failed to take steps to prevent the same from happening to Ms. Flynn.

73.    In the detailed report concerning the sexual assaults of Ms. Flynn, the criminal investigator for the Nevada Office of the Inspector General noted that Mr. Burse "may be in a relationship with two inmates at FMWCC" and that "the PREA coordinator was notified of another victim [not Ms. Flynn] in this case."

74.    The detailed report also states that the investigator spoke to a source who personally witnessed Mr. Burse engage in sexual conversations with Ms. Flynn and another victim.

75.    These conversations occurred at Ms. Flynn's door in the vicinity of others.

76.    Despite filing initial grievances to seek recourse and a safe environment, NDOC failed to intervene until a later date.

## VI.    CLAIMS FOR RELIEF

77.    Plaintiff repeats and realleges each and every allegation made in paragraphs 1-76 as though fully set forth herein.

### A.  FIRST CAUSE OF ACTION
*42 U.S.C. § 1983- Sexual Assault in Violation of the 8th Amendment*
**(Against Donald Burse)**

78.    Mr. Burse was acting under color of state law when he sexually assaulted Ms. Flynn on both occasions.

79.    The sexual assaults served no valid penological purpose.

80.    Mr. Burse sexually assaulted Ms. Flynn for sexual gratification, or for the purpose of humiliating, degrading, or demeaning her.

81.    Such actions violated Ms. Flynn's civil rights under 42 U.S.C. § 1983 and her right to be free from cruel and unusual punishment under the Eighth Amendment of the United States Constitution.

### B.  SECOND CAUSE OF ACTION
*42 U.S.C. § 1983- Deliberate Indifference in Violation of the 8th Amendment*
**(Against James Dzurenda and Does 1 - 10)**

82.    Defendants had a legal obligation to protect Ms. Flynn from being sexually assaulted.

83.    Defendants' actions and omissions created a substantial risk of serious injury to Ms. Flynn.

84.    Defendants were aware of the risk of serious injury to Ms. Flynn and deliberately chose to ignore it.

85.    Defendants acted with deliberate indifference to a substantial risk of harm to Ms. Flynn in violation of the Eighth Amendment of the United States Constitution.

## C.  THIRD CAUSE OF ACTION
### Battery
### (Against Donald Burse and NDOC)

86.    Mr. Burse, acting within the scope of his employment, subjected Ms. Flynn to harmful or offensive touching when he: 1) touched Ms. Flynn's vagina over her pants; 2) put his hand inside her pants; 3) performed oral sex on her; and 4) put his hands inside her shirt and touched her breasts.

87.    Mr. Burse intentionally and unlawfully caused Ms. Flynn to fear offensive and harmful contact.

88.    Mr. Burse intentionally and unlawfully caused such offensive and harmful contact to occur.

89.    Ms. Flynn can not and did not consent to being touched in such a manner.

90.    As a direct and proximate result of Mr. Burse's actions, Ms. Flynn suffered injury and damages.

91.    NDOC, as Donald Burse's employer, is vicariously liable for his tortious conduct.

## D.  FOURTH CAUSE OF ACTION
### False Imprisonment
### (Against Donald Burse and NDOC)

92.    Mr. Burse acted, within the scope of his employment, with the intention to unlawfully confine Ms. Flynn, without her consent, and within boundaries fixed by him including, to wit:

a.  Mr. Burse lured Ms. Flynn to his office;

b.  Mr. Burse closed and locked the door;

c.  No one else was present in the office with them; and

   d. When Ms. Flynn tried to leave, Mr. Burse used physical force to prevent her from doing so and further assaulted her.

93. Ms. Flynn was conscious of the confinement at the time that it occurred.

94. As a direct and proximate result of Mr. Burse's actions, Ms. Flynn suffered injury and damages.

95. NDOC, as Donald Burse's employer, is vicariously liable for his tortious conduct.

### E. FIFTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
### (Against Donald Burse and NDOC)

96. Mr. Burse engaged in extreme and outrageous conduct, within the scope of his employment, that exceeds all possible bounds of decency and is regarded as utterly intolerable.

97. Mr. Burse acted intentionally or recklessly in causing Ms. Flynn extreme emotional distress.

98. Mr. Burse's actions resulted in Ms. Flynn suffering extreme emotional distress.

99. As a direct and proximate result of Mr. Burse's actions, Ms. Flynn suffered injury and damages.

100. NDOC, as Donald Burse's employer, is vicariously liable for his tortious conduct.

### F. INJUNCTIVE RELIEF

101. Injunctive relief is a historical equitable remedy that has been codified in Nevada law at NRS 33.010.

102. NRS 33.010 states that an injunction may be granted:

1. When it shall appear by the complaint that the plaintiff is entitled to the relief demanded, and such relief or any part thereof consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually.

2.    When it shall appear by the complaint or affidavit that the commission or continuance of some act, during the litigation, would produce great or irreparable injury to the plaintiff.

3.    When it shall appear, during the litigation, that the defendant is doing or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual.

103.    As stated above, Ms. Flynn is entitled to relief regarding the predatory and unspeakable sexual assaults committed by Mr. Burse while employed as a chaplain for FMWCC.

104.    Failing to require NDOC and its employees, staff, contractors, or agents to enact and implement policies and procedures that preclude the opportunity for sexual assaults to occur within identified areas at high risk for sexual abuse within the prison will cause irreparable injuries to Plaintiff and other inmates.

105.    Plaintiff seeks injunctive relief, preventing employees, staff, contractors, or agents of NDOC, along with those acting in concert with them, from carrying out and implementing unlawful policies, practices, and acts that create a substantial risk of harm, including sexual assaults, to Ms. Flynn and other inmates.

106.    Plaintiff seeks injunctive relief, requiring NDOC to develop and implement policies, procedures, and practices to ensure that inmates are protected from harm due to sexual abuse and sexual harassment including: 1) prohibiting inmates at FMWCC to be left alone, in an unmonitored area, with male staff; 2) ensuring substantial video coverage of all of the primary areas, such as chapels, frequented by inmates; 3) ensuring substantial video coverage of all areas NDOC considers to be common places for sexual violence to occur; 4) prohibiting staff members accused of sexual assault or sexual harassment from having contact with inmates at least until a matter is fully investigated and prosecuted or dismissed; and 5) ensuring that all staff have the

adequate knowledge, skill, and ability to prevent, detect, and respond to sexual abuse, sexual harassment, and grooming by staff members of individuals in custody.

## G.  DECLARATORY RELIEF

107.    Under the Nevada Uniform Declaratory Judgments Act, NRS 30.010 to 30.160, this Court has the power to declare the rights, status and other legal relations of the parties whether or not further relief is or could be claimed, and a declaration may be either affirmative or negative in form and effect, and such declarations have the force and effect of a final judgment or decree.[5]

108.    Such declarations have the force and effect of a final judgment or decree.[6]

109.    This matter satisfies the four elements that must be met for declaratory relief to be granted, as described below.[7]

110.    The facts stated above herein reveal a justiciable controversy in which a claim of right is asserted against one who has an interest in contesting it.

111.    The controversy is between persons whose interests are adverse.

112.    Ms. Flynn has a legally protectable interest in the controversy.

113.    The issue involved in the controversy is ripe for determination as Ms. Flynn's harm resulted from policies, practices, acts, and omissions of NDOC and its employees, staff, contractors, or agents.

114.    Plaintiff seeks a declaratory judgment that the policies, practices, acts and omissions complained of herein violated Plaintiff's rights.

## VII.    RELIEF REQUESTED

WHEREFORE, Plaintiff requests the following relief from this Court:

---

[5] *See* NRS 30.030.
[6] NRS 30.030.
[7] *Kress v. Corey*, 65 Nev. 1, 25–26, 189 P.2d 352, 364 (1948).

a.  Non-economic damages in the sum in excess of $50,000, or an amount to be determined at the time of trial;

b.  Punitive damages in an amount sufficient to punish Defendants and deter others from like behavior;

c.  All equitable injunctive relief that arises from or is implied by the facts, whether or not specifically requested, including an injunction preventing employees, staff, contractors, or agents of NDOC, along with those acting in concert with them, from carrying out and implementing unlawful policies, practices, and acts that create a substantial risk of harm, including sexual assaults, to Ms. Flynn and other inmates.

d.  Declaration of rights as set forth above;

e.  Award Plaintiff her reasonable attorney's fees and costs incurred in this action; and

f.  Such other and further relief as the court deems just and equitable.

Dated this 28th day of September 2023.

This document does **not** contain the Social Security number of any person.

Pursuant to NRS 53.045, I declare under penalty of perjury that the foregoing is true and correct.

**AMERICAN CIVIL LIBERTIES UNION OF NEVADA**

/s/ Sadmira Ramic, Esq.
SADMIRA RAMIC, ESQ.
Nevada Bar No. 15984
CHRISTOPHER M. PETERSON, ESQ.
Nevada Bar No. 13932
4362 W. Cheyenne Ave.
North Las Vegas, NV 89032
Telephone: (702) 366-1536
Facsimile: (702) 366-1331
Email: ramic@aclunv.org
*Attorneys for Plaintiff*