**ANTHONY P. SGRO, ESQ.**
Nevada Bar No. 3811
**ELAINE ODEH, ESQ.**
Nevada Bar No. 14099
**SGRO & ROGER**
2901 El Camino Avenue, Suite 204
Las Vegas, Nevada 89102
Telephone: (702) 384-9800
Facsimile: (702) 665-4120
*tsgro@sgroandroger.com*
*eodeh@sgroandroger.com*
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

DAWNYELL FLYNN, AN INDIVIDUAL,

Plaintiff,

v.

STATE OF NEVADA ex rel. NEVADA DEPARTMENT OF CORRECTIONS, a public entity of the State of Nevada; DONALD BURSE, an individual; JAMES DZURENDA, director, in his official capacity; AND DOE NEVADA DEPARTMENT OF CORRECTIONS EMPLOYEES 1 – 10, in their individual and official capacity.

Defendant(s).

Case No. 2:22-CV-01753-JAD-NJK

**PLAINTIFF'S OPPOSITION TO DEFENDANT STATE OF NEVADA ex rel. NEVADA DEPARTMENT OF CORRECTIONS AND JAMES DZURENDA'S MOTION FOR SUMMARY JUDGEMENT**

Plaintiff, DAWNYELL FLYNN ("Plaintiff"), by and through her attorneys of record, ANTHONY P. SGRO, ESQ., and ELAINE ODEH, ESQ., of the law firm SGRO & ROGER, hereby respectfully submits her Opposition to Defendant State of Nevada ex rel. Nevada Department of Corrections and James Dzurenda's Motion for Summary Judgement.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Defendants raise three arguments: (1) that NDOC cannot be vicariously liable for NDOC chaplain Donald Burse's intentional torts because his actions were outside the scope of his employment; (2) that James Dzurenda cannot be individually liable because he was not director

at the time of the sexual assaults of Plaintiff and lacked personal participation or deliberate indifference; and (3) that there is no basis for punitive damages.

The record establishes genuine disputes of material fact on each of these issues that preclude summary judgment. For the reasons set forth below, the Defendants' motion should be denied.

**II. STATEMENT OF DISPUTED MATERIAL FACTS**

Plaintiff does not dispute the majority of defendants' Statement of Material Facts for purposes of this motion, with the exception of the following:

> "¶19. In 2018, FMWCC underwent a PREA audit. Exhibit "H." This is an extensive process that involves review of files and numerous interviews of staff and those in custody during a multi-day on-site inspection. *Id.* FMWCC was found to meet all 43 standards of the audit. *Id.* at NDOC000120 121. These standards include prevention planning, responsive planning, training and education, screening risks, reporting, response following report, investigations, discipline, medical and mental care, data collection and review. *(ECF110, p. 5: 13-18)"*

The Plaintiff began her incarceration at FMWCC in December of 2019. (Ex. A, Defendant's initial disclosures p.12, NDOC000006). The relevant PREA audit, which covered the period of her incarceration, and the time of the sexual assaults, was the audit which was completed in 2022. (Ex B, 2022 PREA audit; Ex C Helen Peterson Deposition 41:3-8). The findings of that audit were that:

1. The facility did not demonstrate compliance with PREA standard 115.13 relating to supervision and monitoring (Ex C, 45: 6-12; Ex B, 21-23);

2. Mandatory rounds of the facility that were intended to deter staff sexual abuse were not logged in logbooks (Peterson depo 43:7-19);

3. The facility did not demonstrate compliance with PREA standard 115.15 relating to staff training on PREA (Ex C, 47: 11-25 – 48: 1-4; Ex B, 27);

4. That although the facility underwent upgrades pursuant to PREA standard 115.18, which included the installation of video surveillance, no video surveillance was placed at the chapel despite it being designated as a place where sexual abuse could occur. (Ex C, 45: 17-25, 46: 1-6; Ex B, 35); and,

5. The PREA compliance manager agreed that at the time of the sexual assaults on Plaintiff by chaplain Burse, FMWCC was not in full compliance with PREA standards. (Ex. C, 48: 5-10).

## III. ARGUMENT

### A. <u>NDOC Is Vicariously Liable for Burse's Intentional Torts Because His Actions Were Sufficiently Connected to His Employment and Were Foreseeable</u>

#### 1. The Scope of Employment Analysis Under Nevada Law

Defendants argue that NDOC cannot be vicariously liable for Burse's intentional torts because his actions were outside the scope of employment and were not foreseeable. This argument fails because the evidence establishes genuine disputes of material fact regarding both the connection between Burse's employment duties and the tortious conduct, and the foreseeability of such conduct given NDOC's knowledge and policies.

Under Nevada law, an employer can be held vicariously liable for the intentional torts of an employee if the tort occurs within the scope of the employee's employment. *Rockwell v. Sun Harbor Budget Suites*, 112 Nev. 1217, 1223 (1996). For liability to attach: (1) The actor must be an employee, (2) the action must occur within the scope of employment *Molino v. Asher,* 96 Nev. 814, 817, 618 P.2d 878, 879 (1980); and (3) the intentional conduct must be reasonably foreseeable considering the nature and scope of employment. NRS 41.745.

There are three distinct circumstances in which an employer is liable for an employee's intentional tort: (1) the employee's act was not "a truly independent venture", (2) the employee acted "in the course of the very task assigned," or (3) the employee's act was "reasonably foreseeable under the facts and circumstances of the case considering the nature and scope of his or her employment." NRS 41.745(1)(c). *Anderson v. Mandalay Corp.,* 131 Nev. 825, 831 (2015).

**2. Burse's Criminal Conduct Was Directly Enabled by His Employment Duties**

The record establishes that Burse's sexual assaults occurred during and were directly facilitated by his authorized chaplain activities. Burse used his official position to summon Flynn to his chapel office under the pretense of providing her with a Bible, which was within his authorized duties. (Ex. D, Affidavit for Arrest Warrant, 3). The Religious Practice Manual explicitly made chaplains responsible for preparing schedules for chapel use and conducting religious activities. (Ex. E, Religious Practice Manual, Sections 5(A)(2), 5(B)(2)(b)).

Burse's guilty plea specifically admits that he made "contact with D.F. . . while meeting alone with D.F. in a closed office while inmate D.F. was in the lawful custody and/or confinement of the Department of Corrections . . ." (Ex F, Burse Guilty Plea Agreement/ Amended Information). This occurred in his regular workplace, during regular work hours.

The fact that the sexual contact itself was unauthorized does not sever the connection to employment where the employee used authorized activities and access as the means to commit the tortious acts. Furthermore, the fact that the Attorney General's Office amended the criminal charge, while this case is pending, to include the language "by acts not included in his official duties" cannot serve to absolve NDOC from liability.

**3. NDOC's Policies Directly Facilitated the Tortious Conduct**

The evidence demonstrates that NDOC's own policies and practices created the conditions that enabled Burse's criminal conduct. NDOC provided Burse with a private office in an isolated area of the facility with a door that locks (Ex G, Burse deposition transcript, 23: 16-25) and permitted him to meet alone with inmates without supervision, documentation, or approval. (Ex. L, Ivan Dubon deposition transcript, 20:21-25; Ex G, 60: 11-15).

Despite acknowledging in its PREA training materials that chapels were "common places where sexual violence may occur" and "isolated areas" requiring heightened vigilance (Ex H, 2019 NDOC Pre-Service Staff PREA Training, slide 24; Ex. I, Jerry Howell deposition

transcript, 45:12-46:8), NDOC maintained no video surveillance, required no documentation of meetings, and implemented no additional supervision in chapel areas. (Id.)

These policy choices were not merely inadequate, they actively created the opportunity for abuse by providing private access without safeguards in an area NDOC knew was high-risk. A reasonable jury could find that NDOC's deliberate provision of unsupervised access in high-risk areas directly facilitated Burse's ability to commit the intentional torts.

**4. The Sexual Abuse Was Foreseeable Given NDOC's Knowledge and Experience**

The foreseeability of chaplain sexual abuse is established by NDOC's extensive institutional knowledge of staff-on-inmate sexual abuse patterns. NDOC's 2020 Annual PREA Report documented 135 allegations of staff-on-inmate sexual abuse in the three years preceding chaplain Burse's assault on Plaintiff, with 20 occurring specifically at FMWCC. (Ex. J, 2020 NDOC PREA Annual Report, pp. 7, 10). The 2022 PREA audit of FMWCC revealed 16 additional allegations of staff-on- inmate sexual abuse in the twelve months preceding the audit. (Ex. B, 5). This documented pattern of abuse at the same facility where Burse worked establishes that sexual abuse by staff was not only foreseeable but was a recurring problem of which NDOC had actual knowledge.

Moreover, expert testimony confirms the foreseeability of abuse in unsupervised chaplain interactions. Plaintiff's expert Julie Abbate testified that "staff offices, including chaplain's offices, are always high-risk areas" and that "the ability for staff to be alone with

inmates in the chapel or chaplain's office is a red flag." (Ex. K, Julie Abbate deposition transcript, 78:12-79:5, 85:3-86:11).

**B. Dzurenda Can Be Held Individually Liable Based on His Personal Participation In Policy Decisions That Enabled the Constitutional Violations**

**1. Individual Liability Does Not Require Physical Presence During the Specific Incident**

Defendants argue that Dzurenda cannot be individually liable because he was not NDOC Director at the time of the sexual assaults. This argument mischaracterizes the legal standard for individual liability under 42 U.S.C. § 1983. Individual liability may be established where a defendant's own actions or policy decisions were a proximate cause of the constitutional violation, regardless of whether the defendant was present during the specific incident that caused harm.

The Supreme Court established in *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), that prison officials may be held individually liable for deliberate indifference to substantial risks of serious harm. This standard focuses on whether the official was aware of and consciously disregarded a known risk, not on whether the official was physically present when the risk materialized into actual harm.

**2. Dzurenda Personally Participated in Maintaining Dangerous Policies**

The record establishes genuine disputes regarding Dzurenda's personal participation in policy decisions that created the conditions enabling Burse's constitutional violations against Plaintiff. As NDOC Director from 2016 through 2019, Dzurenda had responsibility for implementing PREA compliance measures and responding to documented patterns of staff-on-inmate abuse. NDOC's 2020 Annual PREA Report, prepared during Dzurenda's tenure, documented extensive allegations of staff-on-inmate abuse throughout the system, including 20 incidents at FMWCC specifically. (Ex J, 7, 10). As Director, Dzurenda had direct access to this

information and was responsible for implementing institutional responses to address documented risks. See NRS 209.131.

Despite this knowledge of substantial risks, NDOC under Dzurenda's leadership failed to implement basic safeguards in chapel areas. The lack of video surveillance, documentation requirements, and supervision protocols in areas identified as high-risk for sexual violence constitutes deliberate policy choices for which Dzurenda, as the responsible official, may be held individually liable.

**3. Dzurenda's Knowledge of Substantial Risks Creates Genuine Factual Disputes**

The evidence establishes that Dzurenda had actual knowledge of substantial risks of sexual abuse in correctional settings generally and in unsupervised areas specifically. NDOC's 2019 PREA training materials, developed and implemented during his tenure, explicitly identified chapels as "Common Places Where Sexual Violence May Occur". (Ex. H, slide 24). The annual PREA reports compiled during Dzurenda's tenure provided detailed documentation of ongoing staff-on-inmate abuse problems throughout NDOC facilities. These reports were institutional documents that would have been available to and reviewed by the Director as part of PREA compliance obligations. A reasonable jury could find that Dzurenda had actual knowledge of the substantial risks that materialized in this case.

**4. The Causal Connection Between Policy Decisions and Constitutional Harm**

The policies maintained during Dzurenda's tenure as Director remained operative at the time of Burse's sexual assault of Plaintiff and were the direct cause of the conditions that enabled the constitutional violations. The absence of surveillance, documentation, and supervision requirements in chapel areas created the specific opportunity that Burse exploited to assault Plaintiff. This causal connection is established by the undisputed evidence that the dangerous conditions identified in PREA training material, unsupervised one-on-one staff inmate contact in isolated areas, were precisely the conditions that enabled Burse's crimes. The institutional

policies that permitted these conditions were implemented and maintained during Dzurenda's tenure and continued unchanged through the time of the assault on Plaintiff.

**C. The Record Supports an Award of Punitive Damages**

**1. Legal Standard for Punitive Damages in Civil Rights Actions**

Punitive damages are available in Section 1983 actions where the defendants' conduct involved reckless or callous indifference to federally protected rights. *Smith v. Wade*, 461 U.S. 30, 56 (1983). The Supreme Court established that the standard does not require actual malice; reckless disregard for constitutional rights is sufficient to support punitive damages.

In the correctional context, courts have awarded punitive damages where officials maintained policies they knew created substantial risks of constitutional violations, particularly involving sexual abuse of inmates. The focus is on whether the defendants' conduct demonstrated a callous disregard for the consequences of their actions or inactions. See *Howard v. Groover*, 706 F. Supp. 3d 1090, 1109 (D. Nev. 2023)( action is taken in reckless disregard for the plaintiff's rights if it reflects complete indifference to the plaintiff's safety or rights or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law.)

**2. NDOC's Conduct Demonstrates Reckless Indifference to Constitutional Rights**

The evidence establishes that NDOC officials acted with reckless indifference to Plaintiff's constitutional rights by maintaining policies they knew created substantial risks of sexual abuse. Despite comprehensive institutional knowledge of staff-on-inmate abuse patterns, documented risks in chapel areas, and specific warnings in PREA training materials, NDOC consciously chose to maintain dangerous conditions. NDOC's 2020 Annual PREA Report documented 135 allegations of staff-on-inmate sexual abuse in the three years preceding Burse's assault on Plaintiff, including 20 at FMWCC specifically. (Ex. J, 7, 10). The 2022 PREA audit identified additional deficiencies in training, supervision, and monitoring. (Ex. B, 21-23, 27, 35). Despite this documented pattern of abuse and identified risks, NDOC took no corrective action

to install surveillance or implement safeguards in chapel areas. (Ex. C, 45: 17-25, 46: 1-6, 48: 5-10)

This pattern of conscious inaction despite clear warnings demonstrates the reckless disregard necessary to support punitive damages.

**3. The Institutional Pattern of Deliberate Indifference Supports Punitive Relief**

Helen Peterson's testimony reveals the institutional nature of the deliberate indifference. As PREA Compliance Manager, Peterson confirmed that cameras were "repeatedly requested" for chapel areas but were not installed due to "budget constraints". (Ex. C, 18:13-25). This testimony demonstrates that NDOC officials made conscious budgetary decisions to prioritize cost savings over inmate safety despite knowing the substantial risks.

The evidence shows that NDOC's pattern of inaction was not due to ignorance or inadvertence but reflected deliberate institutional choices. When presented with documented risks, audit findings, and professional recommendations for enhanced supervision, NDOC officials consistently chose not to implement safeguards that could have prevented the sexual assault on Plaintiff.

**IV. CONCLUSION**

Defendants' motion for summary judgment should be denied because genuine disputes of material fact exist on all three issues they raise. The evidence, viewed in the light most favorable to Plaintiff, supports findings that: (1) NDOC is vicariously liable for Burse's intentional torts because his conduct was sufficiently connected to his employment duties and was foreseeable given NDOC's knowledge of risks and policy choices; (2) Dzurenda is individually liable based on his personal participation in maintaining policies that enabled the constitutional violations and his deliberate indifference to known substantial risks; and (3) the record supports punitive damages based on the institutional pattern of reckless indifference to

constitutional rights demonstrated by NDOC's conscious decisions to maintain dangerous conditions despite comprehensive knowledge of risks.

WHEREFORE, Defendant's Motion for Summary Judgement should be denied in its entirety.

Respectfully submitted,

**SGRO & ROGER**
By: */s/ Elaine Odeh*
ANTHONY P. SGRO, ESQ.
Nevada Bar No. 3811
ELAINE ODEH, ESQ.
Nevada Bar No. 14099
2901 El Camino Ave., Ste. 204
Las Vegas, NV 89102
*Attorneys for Plaintiff*

STATE OF NEVADA )
) ss:
COUNTY OF CLARK )

**DECLARATION OF ELAINE ODEH. ESQ.**
**IN SUPPORT OF PLAINTIFF'S OPPOSITION TO**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

ELAINE ODEH, ESQ. hereby declares under penalty of perjury of the laws of the State of Nevada as follows:

1. That I am an attorney licensed to practice law in the State of Nevada, including in the United States District Court for the District of Nevada;

2. That I have been retained as counsel for Plaintiff, Dawnyell Flynn ("Plaintiff") regarding Case No. 2:22-CV-01753-JAD-NJK and I am competent to testify to the matters contained herein; and

3. That all factual assertions in Plaintiff's Opposition to Defendants' Motion for Summary Judgment are true to the best of my knowledge and belief.

4. Attached hereto as exhibits to Plaintiff's Opposition to Defendants' Motion for Summary Judgment are true and correct copies of the following documents, which were produced, exchanged, or obtained during discovery in this action:

5. These documents are authentic records obtained through discovery, court proceedings, or official sources, maintained in the ordinary course of this litigation, and are true and correct copies to the best of my knowledge and belief.

**Exhibit A**: Defendants' Initial Disclosures

**Exhibit B**: 2022 PREA Audit Report for FMWCC

**Exhibit C**: Deposition Transcript of Helen Peterson

**Exhibit D**: Affidavit for Arrest Warrant of Donald Burse

**Exhibit E**: NDOC Religious Practice Manual

**Exhibit F**: Donald Burse Guilty Plea Agreement/Amended Information

**Exhibit G**: Deposition Transcript of Donald Burse (confidential filed under seal)

**Exhibit H**: 2019 NDOC Pre-Service Staff PREA Training Materials

**Exhibit I**: Deposition Transcript of Jerry Howell

**Exhibit J**: 2020 NDOC PREA Annual Report

**Exhibit K**: Deposition Transcript of Julie Abbate

**Exhibit L**: Deposition Transcript of Ivan Dubon (confidential filed under seal)

6. These documents are authentic records obtained through discovery, court proceedings, or official sources, maintained in the ordinary course of this litigation, and are true and correct copies to the best of my knowledge and belief.

7. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED: July 28, 2025

**SGRO & ROGER**
By: */s/ Elaine Odeh*
ANTHONY P. SGRO, ESQ.
Nevada Bar No. 3811
ELAINE ODEH, ESQ.
Nevada Bar No. 14099
2901 El Camino Ave., Ste. 204
Las Vegas, NV 89102
*Attorneys for Plaintiff*