**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Dawnyell Flynn,

      Plaintiff

v.

Burse, et al.,

      Defendants

Case No.: 2:22-cv-01753-JAD-NJK

**Order Resolving Motions
for Summary Judgment**

[ECF Nos. 106, 110]

Nevada inmate Dawnyell Flynn claims that she was sexually assaulted in the chapel of the Florence McClure Women's Correctional Center (FMWCC) by its former chaplain, Donald Burse.  So she asserts various federal civil-rights and state-law tort claims against Burse, who has since been convicted in state court of conspiracy to commit unauthorized custodial conduct by an employee.  And she seeks to hold the Nevada Department of Corrections (NDOC) and its current director liable for these events, theorizing that NDOC's policies and customs failed to protect her from the chaplain's misconduct.

All parties now cross-move for summary judgment.  I grant Flynn summary judgment on her Eighth Amendment, battery, and intentional-infliction-of-emotional-distress claims against Burse because his guilty plea in his criminal case and other undisputed evidence establish the facts necessary to meet the elements of those claims.  But I deny the motions in all other respects because the remaining claims turn on disputed facts or the parties' briefing falls short of demonstrating otherwise.  I then refer this case to the magistrate judge for a mandatory settlement conference.

**Background**

**A.     Flynn's relationship with Burse begins as a casual conversation about religion.**

The story of what happened between Flynn and Burse is drawn from the Inspector General's investigation, including the Inspector General's interviews of Flynn.[1]  Donald Burse formerly served as an "institutional chaplain" at FMWCC, where Flynn was and remains incarcerated.  Flynn avers that, in June or July 2020, Burse began frequenting the dorm in which she was housed to counsel her about religion.[2]  These meetings typically occurred as one-on-one conversations at a table located in the middle of an open dorm.[3]  During those interactions, Flynn began flirting with Burse, and their conversations eventually turned to the possibility that he might provide her with contraband like small bottles of alcohol.[4]

**B.     Burse sexually assaults Flynn in the chapel.**

Flynn states that Burse summoned her to his office inside the prison chapel sometime in August 2020 under the pretense of giving her a Bible.[5]  When she arrived, Burse was alone in the chapel.[6]  She reported that the encounter escalated into sexual contact initiated by Burse—he touched her breasts over her clothing, touched her genitals, and then performed oral sex on her.[7]

---

[1] *See* ECF No. 106-9.  The record includes the investigator's declaration supporting probable cause for Burse's arrest that recounts what Flynn reported in her interviews, and it notes the investigator's observations during them.

[2] ECF No. 106-9 at 4.

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.* at 4–5.

2

When Flynn tried to end the encounter and leave, Burse impeded her efforts by touching her again.[8]

Flynn described a second interaction with Burse later that month.[9]  During that conversation, Flynn says that they discussed the possibility of future sexual encounters in exchange for contraband, including alcohol, makeup, and synthetic cannabinoids commonly referred to as "spice."[10]  Flynn later attended a chapel service in August 2020 after which Burse approached her and asked her to remain so they could speak privately in his office.[11]  Flynn refused because she believed that Burse had not followed through on the contraband he had previously discussed providing.[12]

**C.      NDOC learns of the sexual assaults during a separate investigation.**

On February 4, 2021, an investigator with the Nevada Office of the Inspector General learned of the alleged assaults while interviewing another inmate about an unrelated matter.[13]  The investigator later interviewed Flynn about the two incidents,[14] and Flynn thereafter filed a grievance about the assaults.  The following February, NDOC notified Flynn that her grievance had been substantiated and forwarded to the Inspector General for review.[15]

---

[8] *Id.* at 4–5.

[9] *Id.*

[10] *Id.*

[11] *Id.* at 5–6.

[12] *Id.* at 6.

[13] *Id.* at 3.

[14] *Id.*

[15] *See* ECF No. 122-1 at 112.

**D.      Flynn sues Burse, NDOC, and NDOC's current director.**

Represented by counsel from the American Civil Liberties Union of Nevada, Flynn filed a complaint against Burse, the Nevada Department of Corrections, and its current director James Dzurenda in Nevada State Court in July 2022.[16]  The state defendants removed the case to federal court.[17]  In her operative first amended complaint, Flynn asserts five causes of action and prays for monetary damages, punitive damages, declaratory relief, and injunctive relief:

> Claim 1:  a § 1983 excessive-force claim against Burse, alleging that the **sexual assault** violated Flynn's Eighth Amendment right against cruel and unusual punishment.

> Claim 2:  a § 1983 claim against Dzurenda in his official capacity, alleging a violation of her Eighth Amendment right against **deliberate indifference** to her safety and theorizing that the assault occurred due to the facility's failure to protect her from Burse's assault.

> Claim 3:  **battery** against Burse individually, and against NDOC vicariously as Burse's employer.

> Claim 4:  **false imprisonment** against Burse individually, and against NDOC vicariously as Burse's employer.

> Claim 5:  intentional infliction of emotional distress (**IIED**) against Burse individually, and against NDOC vicariously as Burse's employer.

Flynn's theories rely in part on NDOC's implementation of the Prison Rape Eliminate Act (PREA) framework.  That act is aimed at addressing sexual abuse in detention facilities through national standards that focus on prevention, detection, response, and accountability.[18]  NDOC represents that it implements PREA through administrative regulations, operating procedures, staffing plans, staff and inmate training, screening measures, unannounced

---

[16] ECF No. 1-1.

[17] ECF No. 1.

[18] 42 U.S.C. § 15061; 34 U.S.C. § 30302(1) ("[The purpose of the Act is to] establish a zero-tolerance standard for the incidence of prison rape in prisons in the United States.").

inspections, video surveillance where available, and periodic facility audits.[19]  Flynn contends that NDOC failed to ensure compliance with those policies and that the facility's noncompliance allowed Burse to sexually assault her.

**E.      Burse pleads guilty to conspiracy to commit unauthorized custodial conduct by an employee.**

For his conduct with Flynn, Burse was charged in Nevada state court with two counts of sexual abuse of a prisoner in violation of Nevada Revised Statute (NRS) 212.188(1)(a) (a category D felony) and one count of unauthorized custodial conduct by an employee in violation of NRS 212.188(1)(b) (a gross misdemeanor).[20]  He ultimately pled guilty to a single count of conspiracy to commit unauthorized custodial conduct by an employee in violation of NRS 199.480(3) and NRS 212.188(1)(b), a gross misdemeanor, and was sentenced to time served.[21]

**F.       The parties cross-move for summary judgment.**

Discovery is over.[22]  Flynn now moves for summary judgment on all of her claims, while also arguing in her opposition that genuine disputes of material fact bar summary judgment in the defendants' favor.[23]  NDOC moves for summary judgment, contending that it cannot be held vicariously liable for Burse's intentional torts because the alleged conduct fell outside the scope of his employment.  Dzurenda separately seeks summary judgment on the § 1983 claim against him, arguing that he cannot be held individually liable because he was not NDOC's director when the assaults occurred, and he neither personally participated in the conduct nor acted with

---

[19] ECF No. 110-10 at 4 (NDOC's answers to Flynn's interrogatories).

[20] ECF No. 106-13.

[21] ECF Nos. 106-14, 106-15.

[22] *See* ECF No. 85.

[23] *See* ECF No. 122 at 2.

deliberate indifference to Flynn's safety.  Burse did not file an opposition Flynn's motion or move for summary judgment in his favor.

**Discussion**

The principal purpose of the summary-judgment procedure is to isolate and dispose of factually unsupported claims or defenses.[24]  The moving party bears the initial responsibility of presenting the basis for its motion and identifying the portions of the record or affidavits that demonstrate the absence of a genuine issue of material fact.[25]  If the moving party satisfies its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show a genuine issue for trial.[26]

Who bears the burden of proof on the factual issue in question is critical.  When the party moving for summary judgment would bear the burden of proof at trial (typically the plaintiff), "it must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial."[27]  Once the moving party establishes the absence of a genuine issue of fact on each issue material to its case, "the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense."[28]

When instead the opposing party would have the burden of proof on a dispositive issue at trial, the moving party (typically the defendant) doesn't have to produce evidence to negate the

---

[24] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[25] *Id.* at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

[26] Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Auvil v. CBS 60 Minutes,* 67 F.3d 816, 819 (9th Cir. 1995).

[27] *C.A.R. Transp. Brokerage Co. v. Darden Rests, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (citation and quotations omitted)).

[28] *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (citation omitted).

opponent's claim; it merely has to point out the evidence that shows an absence of a genuine material factual issue.[29]  The movant need only defeat one element of the claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[30]  "When simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of"—and against—"both motions before ruling on each of them."[31]

### A.    Flynn is entitled to summary judgment on her Eighth Amendment, battery, and IIED claims against Burse, but her false-imprisonment claim must be tried.

Flynn moves for summary judgment against Burse on her § 1983 claim and her state-law claims for battery, false imprisonment, and IIED.  Burse did not file an opposition to the motion or seek to extend the deadline to do so, and that deadline has long since passed.  The failure to oppose a motion for summary judgment does not permit the court to enter summary judgment by default, but the lack of a response is not without consequences.[32]  As Rule 56(e) of the Federal Rules of Civil Procedure explains, "If a party fails . . . to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ."[33]

---

[29] *See, e.g., Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990); *Celotex*, 477 U.S. at 323–24.

[30] *Celotex*, 477 U.S. at 322.

[31] *Tulalip Tribes of Wash. v. Wash.*, 783 F.3d 1151, 1156 (9th Cir. 2015) (citing *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two,* 249 F.3d 1132, 1134 (9th Cir. 2001)).

[32] *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013).

[33] Fed. R. Civ. P. 56(e)(2), (3); *Heinemann*, 731 F.3d at 917.

### 1.      *Burse's guilty plea establishes some facts as undisputed—but not all.*

While Burse did not oppose Flynn's motion, materials in the record muddy Flynn's ability to show that her claims against Burse deserve summary disposition.  One of those items is Burse's deposition testimony—placed in the record by Flynn—and in which Burse denies assaulting her.[34]  Flynn argues that Burse's testimonial denial does not create a material factual dispute because Burse's subsequent state-court guilty plea conclusively establishes the facts necessary to resolve her claims against him.[35]  The Ninth Circuit treats a guilty plea as a conclusive admission of the facts necessary to support the conviction,[36] and a guilty plea can have a preclusive effect in civil litigation if (1) the conviction was for a serious offense such that the defendant was motivated to fully litigate the charges, (2) there was a reliable proceeding to prevent convictions of doubtful validity from being used,[37] (3) the party to be estopped was a party to the prior proceeding, and (4) the issue offered for preclusion was necessarily decided.[38]

---

[34] *See* ECF No. 124 (sealed).  Burse testified that Flynn was brought into the chapel while "the door was wide open," that the space was "filled with people," and that she was told she "shouldn't be here" and needed to leave because she was "there without permission."  *Id.* at 28:16–20.  He also testified that this was the first time he became aware of Flynn "by name."  *Id.* at 50:1–2.  And he described the only interaction he attributes to the relevant period as a brief, nonsexual exchange in which he asked an officer to send Flynn over for religious materials— "They sent her over.  She came and got it and left."  *Id.* at 51:13–16.

[35] ECF No. 106 at 9.

[36] *United States v. Benson*, 579 F.2d 508, 509 (9th Cir. 1978).

[37] *Ayers v. City of Richmond*, 895 F.2d 1267, 1271 (9th Cir. 1990), states the second factor as requiring "a full and fair trial" to prevent convictions of "doubtful validity" from being used.  But the Ninth Circuit has applied *Ayers* in guilty-plea cases without treating "trial" as a literal prerequisite.  *See, e.g., Real Prop. Located at Section 18*, 976 F.2d 515, 518–19 (9th Cir. 1992) (applying *Ayers* in which the claimant pled guilty and noting there was "no dispute as to the validity" of the conviction; explaining that the guilty plea "admitted the truth of all the elements charged" and thus "established the validity of those facts" for collateral-estoppel purposes).

[38] *Real Prop.*, 976 F.2d at 518–19.

8

The first three of these factors are plainly satisfied. Burse pled guilty to a gross misdemeanor carrying a potential sentence of up to 364 days, and his plea triggered sex-offender registration—consequences that provided ample incentive to litigate.[39] Nor is there any suggestion that the conviction is of doubtful validity, as Burse entered the plea after a full canvass confirming it was knowing and voluntary,[40] and Burse is the same party in both proceedings.

Whether Burse's guilty plea necessarily decided that he sexually assaulted Flynn is more complicated because the elements of his offense of conviction and the claims Flynn pleads are not identical. Burse pled guilty to conspiracy to commit unauthorized custodial conduct under Nevada Revised Statutes (NRS) 212.188(1)(b) and 199.480(3).[41] In doing so, he admitted that while employed as a chaplain at FMWCC, he conspired with an unknown individual to engage in unauthorized conduct with Flynn in a closed office.[42] And because NRS 212.188 criminalizes only specified custodial conduct undertaken with intent to abuse the prisoner or to arouse, appeal to, or gratify sexual desire, Burse's plea necessarily established that the conduct was sexual in nature and undertaken with that intent.[43] Those facts were essential to Burse's conviction and are therefore conclusively established.

---

[39] *See, e.g., Murnane v. Las Vegas Metro. Police Dep't*, 2016 WL 10806738, at *4 (D. Nev. Mar. 31, 2016) (holding that issue preclusion's "serious offense" factor was satisfied because the defendant pled guilty to two gross misdemeanors for abusing his authority as a police officer— offenses carrying up to one year of imprisonment on each count and mandatory sex-offender registration).

[40] ECF No. 106-15.

[41] ECF No. 106-14 at 9.

[42] *Id.* at 10.

[43] Nev. Rev. Stat. §§ 212.188(3)(b)(1)(I)–(IV).

9

### 2. *Flynn is entitled to summary judgment on her Eighth Amendment sexual-assault claim against Burse.*

Flynn's first claim for relief is a § 1983 Eighth Amendment claim against Burse for "sexual assault."[44] "Prisoner Eighth Amendment challenges generally fall into three broad categories": deliberate indifference to serious medical needs, conditions of confinement, and excessive force.[45] The Ninth Circuit "has consistently placed prisoner sexual-assault claims within the same legal framework as excessive-force claims."[46] A prisoner presents a viable Eighth Amendment claim under such a theory if she establishes that a prison staff member, (1) acting under color of law (2) and without legitimate penological justification, (3) touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning her.[47]

The facts necessarily established by Burse's guilty plea satisfy each element of this claim as a matter of law. Burse admitted to the state court that he used his position as a prison chaplain to meet with Flynn, a prisoner in lawful custody,[48] which places his conduct under color of state law. The Ninth Circuit has expressly recognized that "[s]exual contact between a prisoner and a prison guard serves no legitimate role and is simply not 'part of the penalty that criminal offenders pay for their offenses against society,'"[49] so the no-legitimate-penological-purpose element is satisfied by the nature of the conduct itself. And because NRS 212.188 criminalizes

---

[44] ECF No. 27 at 11.

[45] *Bearchild v. Cobban*, 947 F.3d 1130, 1140 (9th Cir. 2020).

[46] *Id*. (cleaned up).

[47] *Id.* at 1144.

[48] ECF No. 106-14 at 10.

[49] *Wood v. Beauclair*, 692 F.3d 1041, 1046, 1050 (9th Cir. 2012) (internal citations omitted).

only custodial conduct undertaken with intent to abuse a prisoner or to arouse, appeal to, or gratify sexual desire, Burse's plea conclusively establishes that he engaged in sexual conduct for his own sexual gratification.  Flynn is therefore entitled to summary judgment on her Eighth Amendment sexual-assault claim against Burse.

### 3.    *Flynn is entitled to summary judgment on her battery claim.*

In her third cause of action, Flynn asserts a state-law battery claim against Burse.[50]  In Nevada, "a battery is an intentional and offensive touching of a person who has not consented to the touching."[51]  Nevada law also holds that a prisoner cannot consent to sexual contact with a custodial officer.[52]

Through his guilty plea, Burse admitted that, while employed as a chaplain at FMWCC, he made unauthorized contact with Flynn, an inmate in NDOC custody, outside his official duties, while meeting with her alone in a closed office.[53]  And because NRS 212.188 requires that the custodial conduct be undertaken with sexual intent, his plea necessarily establishes that the contact was sexual in nature and intentional.  A sexual touching under those circumstances is inherently offensive,[54] and Flynn could not consent to it as a matter of law.  Flynn is therefore entitled to summary judgment on her battery claim against Burse, too.

---

[50] ECF No. 27 at 12.

[51] *Humboldt Gen. Hosp. v. Sixth Jud. Dist. Ct.*, 376 P.3d 167, 171 (Nev. 2016) (cleaned up).

[52] Nevada criminalizes sexual contact between custodial staff and prisoners as unauthorized custodial conduct.  *See* Nev. Rev. Stat. § 212.188 (prohibiting specified custodial sexual conduct with an inmate); *see also* ECF No. 27-1 at 19 (PREA training materials stating, "By law inmates [cannot] consent to sexual activity while in a confinement setting to staff, volunteers, contractors or other inmates," citing NRS 212.188 and related authority); *Wood*, 692 F.3d at 1046–47 (finding that "the power dynamics between prisoners and guards make it difficult to discern consent from coercion.").

[53] ECF No. 106-14 at 10.

[54] *See Wood*, 692 F.3d at 1046.

### 4. *Conflicting evidence about whether Burse confined Flynn precludes summary judgment on her false-imprisonment claim.*

Flynn's fourth cause of action contains a false-imprisonment claim against Burse.[55]  In her summary-judgment motion, Flynn relies on NRS 200.460 to argue that Burse's guilty plea also conclusively establishes his liability for false imprisonment.[56]  But that statute supplies the elements for criminal false-imprisonment culpability, not civil liability.[57]  For criminal culpability, false imprisonment consists simply of "confinement or detention without sufficient legal authority."[58]  For civil liability to attach, however, a plaintiff must prove that the defendant (1) acted intending to confine the other or a third person within boundaries fixed by the actor, (2) his act directly or indirectly resulted in such a confinement of the other, and (3) the other is conscious of the confinement or is harmed by it.[59]

Because Flynn's summary-judgment argument relies on the wrong set of elements, she has not established that the record evidence proves without material dispute that Burse is liable in tort for false imprisonment.  Flynn argues that during the second assault, Burse "escorted [her] into his office and locked the door behind him," and when she tried to leave, he grabbed her from behind and restrained her.[60]  She cites the arrest-warrant affidavit and Investigator Dubon's testimony recounting what Flynn reported in her interviews as support for those details, and she

---

[55] ECF No. 27 at 12.

[56] ECF No. 106 at 18.

[57] *See* Nev. Rev. Stat. § 200.460 (included in the chapter entitled "Crimes against the person").

[58] Nev. Rev. Stat. § 200.460(1).

[59] *Hernandez v. City of Reno*, 634 P.2d 668, 671 (Nev. 1981).

[60] ECF No. 106 at 18.

reasons that Burse—who had no security or disciplinary authority as a chaplain—lacked any lawful privilege to confine her.

But those points do not carry her burden for two reasons. First, they are directed to a general "confinement without legal authority" theory drawn from the criminal statute she cites, not to the civil elements she must prove—particularly intent to confine within boundaries fixed by the actor and confinement that directly results from the actor's conduct. Second, to the extent Flynn seeks to avoid that mismatch by relying on Burse's guilty plea, the plea admits only what was necessary to the conviction: unauthorized custodial contact with Flynn while meeting alone with her in a closed office. It does not necessarily decide whether Burse locked the door, used physical restraint to prevent her from leaving, or otherwise intended to confine her in the way the civil tort requires. Burse's deposition testimony creates a genuine issue of fact as to Flynn's alleged confinement because Burse testified that Flynn was not just encouraged, but instructed, to leave.[61] Because Flynn has not tied Burse's guilty-plea admissions to the elements she must prove, and because Burse's deposition testimony creates a genuine issue of fact, Flynn has not carried her summary-judgment burden on this claim.

### 5. *Flynn is entitled to summary judgment on her IIED claim against Burse.*

Flynn's fifth cause of action contains an IIED claim against Burse. To state an IIED claim under Nevada law, a plaintiff must allege that (1) the defendant engaged in "extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress," (2) the plaintiff "suffered severe or extreme emotional distress," and (3) "actual or proximate causation."[62] To be extreme and outrageous, conduct must be "outside all possible

---

[61] ECF No. 24 at 28:16–20.

[62] *Star v. Rabello*, 625 P.2d 90, 91–92 (Nev. 1981).

bounds of decency" and regarded as "utterly intolerable in a civilized community."[63]  Nevada uses a sliding-scale approach for IIED claims in which a plaintiff may prove a lesser showing of emotional distress depending on the outrageousness of the conduct.[64]

Flynn contends that her severe emotional distress may be inferred from the nature of the assault itself.[65]  The Ninth Circuit has acknowledged that any sexual assault "is objectively 'repugnant to the conscience of mankind'"[66] and in a prison setting "is deeply offensive to human dignity."[67]  So Burse's conduct, as admitted and established by the details of his guilty plea, satisfies the first element of this claim.

Other evidence in the record, which has gone unrefuted by Burse's lack of opposition to the motion, establishes the rest of this claim without material dispute.  Flynn contends that "the ongoing impact of the assault, [her] need to file multiple grievances, and the institutional response all demonstrate the severity of the emotional harm inflicted."[68]   And evidence supports the notion that she suffered emotional distress, including (1) the investigator's arrest-warrant affidavit describing that Flynn was visibly upset and shaking while describing the events during an interview,[69] and (2) Flynn's grievance stating that she had not received counseling and instead "has coped with synthetic marijuana."[70]  While the level of severity of this emotional distress

---

[63] *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (cleaned up).

[64] *See Nelson v. City of Las Vegas*, 665 P.2d 1141, 1145 (Nev. 1983).

[65] ECF No. 106 at 20.

[66] *Bearchild*, 947 F.3d at 1144 (quoting *Hudson v. McMillian*, 503 U.S. 1, 10 (1992)).

[67] *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000) ("A sexual assault on an inmate by a guard—regardless of the gender of the guard or of the prisoner—is deeply offensive to human dignity.").

[68] ECF No. 106 at 20.

[69] ECF No. 106-9 at 4.

[70] ECF No. 122-1 at 62.

may not be catastrophic, in light of the Ninth Circuit's recognition that sexual assault in the prison context is utterly intolerable, it suffices under Nevada's sliding-scale approach. I thus grant Flynn summary judgment on her intentional-infliction-of-emotional-distress claim against Burse.

**B.    There are genuine disputes of material fact over whether NDOC is vicariously liable for Burse's torts.**

In her third, fourth, and fifth causes of action, Flynn seeks to hold NDOC vicariously liable for Burse's battery, false-imprisonment, and IIED. Nevada law holds employers vicariously liable for their employees' intentional torts committed in the course and scope of their employment unless certain exceptions are met.[71] Those exceptions, codified at NRS 41.475, provide that "[a]n employer is not liable for harm or injury caused by the intentional conduct of an employee if the conduct of the employee: (a) Was a truly independent venture of the employee; (b) Was not committed in the course of the very task assigned to the employee; and (c) Was not reasonably foreseeable under the facts and circumstances of the case considering the nature and scope of his or her employment."[72]

Flynn appears to invoke all three of these exceptions in seeking summary judgment against NDOC on these vicarious-liability-based claims.[73] She argues that Burse's conduct falls within the first two theories because he used the instrumentalities of his employment such as his authority as chaplain, his chapel office, and his ability to summon inmates,[74] to facilitate the

---

[71] *Anderson v. Mandalay Corp.*, 358 P.3d 242, 247 (Nev. 2015).

[72] Nev. Rev. Stat. § 41.745(1). For purposes of this statute, "employer" includes the State of Nevada and any of its agencies. Nev. Rev. Stat. § 41.745(3)(b).

[73] ECF No. 106 at 18; ECF No. 122 at 3–5; ECF No. 134 at 3–4.

[74] ECF No. 106-12 at 7.

15

assault.[75]  She also contends that NDOC's policies and training materials that recognize chapels as potential high-risk areas for sexual abuse render the misconduct reasonably foreseeable.

For its part, NDOC contends that sexual assault is, by its nature, conduct for personal purposes—not conduct "on behalf of" NDOC or "out of any sense of duty owed to" NDOC—and it cannot be repackaged as an assigned chaplain task merely because it occurred on prison property and near the chapel.[76]  And NDOC maintains that Flynn's reliance on generalized PREA materials identifying chapels as higher-risk "isolated areas" would collapse the statute into a strict-liability one for intentional criminal acts—a result that the Nevada Legislature designed the statute to avoid.[77]

### 1.      *The record does not support NDOC's vicarious liability for Burse's torts under NRS 41.745's first two exceptions.*

Flynn relies on the Nevada Supreme Court's opinion in *Prell Hotel Corp v. Antonacci* for the proposition that employers can be held liable when employees use their position of authority to commit torts, even when those acts are unauthorized.[78]  In *Prell*, an invited casino guest was playing blackjack when he lost money and insulted the dealer.[79]  The dealer reacted by punching the guest in the eye and knocking him unconscious.[80]  The Nevada Supreme Court found that the hotel was vicariously liable for the assault because the dealer "did not leave his position behind

---

[75] ECF No. 134 at 3.  Flynn cites *Anderson* for the proposition that conduct is not an "independent venture" when an employee uses the instrumentalities of employment to commit a tort.  But *Anderson* addressed vicarious liability under NRS 41.745(c)'s foreseeability pathway.

[76] ECF No. 110 at 9–12.

[77] *Id.* at 12–13.

[78] ECF No. 106 at 18; *Prell Hotel Corp. v. Antonacci*, 469 P.2d 399 (Nev. 1970).

[79] *Prell*, 469 P.2d at 400.

[80] *Id.*

the 21 table" and his willful tort occurred "within the scope of the very task assigned to him, that of dealing '21.'"[81]

NDOC argues that this case lacks that same within-the-scope tether. It points first to Burse's plea materials, in which he admitted that his contact with Flynn was "not included in his official duties,"[82] and it emphasizes that the alleged conduct served only personal gratification rather than any NDOC purpose. NDOC also relies on facility policies that prohibited inmates from going to the chaplain's office and requiring one-on-one religious counseling to occur instead as a professional visit in the visiting room with administrative approval—approval that Burse never sought.[83] In NDOC's view, the employment may have provided access, but it did not give rise to the task like in *Prell*.

But Flynn does not claim that Burse assaulted her in the midst of performing an assigned chaplain task the way the dealer in *Prell* struck a patron while dealing blackjack without leaving his post. Flynn theorizes that Burse promised to give her a Bible as a pretext to get her alone in a closed office and that the sexual contact occurred only after he had her isolated.[84] And when NDOC policy required meetings with clergy to occur only as an approved professional visit in the visiting room, such an unapproved private meeting in the chaplain's office was not "the very task assigned" as in *Prell*.

For the same reason, Flynn's "instrumentalities" theory cannot overcome the independent-venture limitation on NDOC's vicarious liability. Burse's position enabled him to summon Flynn and meet with her in a chapel office, which may explain how the encounter was

---

[81] *Id.*

[82] ECF No. 110-3 at 10.

[83] ECF No. 132-1.

[84] ECF No. 27 at 10.

17

arranged, but it does not convert sexual contact for personal gratification into conduct performed on NDOC's behalf or out of any sense of duty owed to NDOC. If access, location, and perceived authority were enough, the "independent venture" and "very task assigned" limitations would do little work whenever an intentional tort occurred on the premises during work hours. Nevada law requires more than mere workplace opportunity, and Flynn's evidence does not supply it.

### 2. *There is a genuine dispute of material fact as to whether Burse's conduct was foreseeable.*

That leaves NRS 41.745(1)'s third exception—foreseeability—as Flynn's sole pathway to hold NDOC vicariously liable for Burse's intentional torts. To avoid summary judgment, she must present evidence on which a reasonable jury could conclude that Burse's sexual assault was "reasonably foreseeable under the facts and circumstances of the case considering the nature and scope of [his] employment."[85] The parties use the framework of two Nevada Supreme Court holdings in the seminal vicarious-liability cases of *Wood v. Safeway, Inc.*[86] and *Anderson v. Mandalay Corp* to analyze this foreseeability issue.[87]

In *Wood,* Safeway hired Action Cleaning to clean its grocery store, and Ronquillo-Nino was one of Action Cleaning's janitors.[88] While performing that work, Ronquillo-Nino thrice sexually assaulted a Safeway employee.[89] The Nevada Supreme Court found that the assaults were not reasonably foreseeable because the employee "had no prior criminal history in the

---

[85] *Anderson*, 358 P.3d at 247.

[86] *Wood*, 121 P.3d 1026.

[87] *Anderson*, 358 P.3d at 242.

[88] *Wood*, 121 P.3d at 1028.

[89] *Id.* at 1029.

18

United States or Mexico," Action Cleaning performed thorough background checks on its employees, and Action Cleaning "had not received complaints of sexual harassment regarding [him] or any other employee in the past ten years."[90]

The Nevada Supreme Court reached the opposite conclusion in *Anderson v. Mandalay Corp.* Gonzalez worked at Mandalay as a "House Person" who assisted in cleaning and serving guest rooms as needed, so he had a keycard that opened guest rooms. Gonzalez used that keycard access to enter a guest's room and then sexually assaulted her while she was unconscious. In finding the hotel vicariously liable, the Court focused on several pieces of evidence that were missing in *Wood*: (1) "at least five Mandalay employees had sexually assaulted guests and coworkers before Gonzalez attacked Anderson"; (2) "Mandalay knew employees entrusted with keyed access to occupied rooms abused that access to commit property crimes"; (3) "Mandalay had notice its employees were capable of sexual assault, and some employees abused their keycard access to enter guest rooms without authorization"; (4) "Mandalay [had] suspended Gonzalez for 31 days in response to allegations that he harassed and threatened a female supervisor"; and (5) "[a]fter Gonzalez's suspension ended, Mandalay restored his keycard access to occupied rooms and assigned him to a shift with minimal supervision."[91] On those facts, the *Anderson* court found that a reasonable jury could find that Gonzalez's assault of a guest was reasonably foreseeable.[92]

To liken itself to Safeway in *Wood* rather than Mandalay in *Anderson*, NDOC advances two foreseeability arguments—one focused on Burse and the other focused on the chapel

---

[90] *Id.* at 1037.

[91] *Anderson*, 358 P.3d at 246.

[92] *Id.* at 247.

setting.[93]  On the employee side, NDOC argues that it had no reason to anticipate that Burse posed a sexual-abuse risk.  It represents that its pre-employment background check reflected only a 1990 arrest for domestic violence and a 2001 arrest for aiming a firearm for Burse, and it characterizes those incidents as facts that do not supply a reasonable basis to anticipate a staff-on-inmate sexual assault decades later because they were temporally remote, non-sexual in nature, and not resulting in prosecution or conviction.[94]

On the environment side, NDOC acknowledges that its PREA training materials identify the chapel as an "isolated area" presenting heightened risk, but it argues that those training principles do not amount to facility-specific notice that FWMCC's chapel or chaplain's office posed a foreseeable avenue for staff-on-inmate sexual abuse at this facility.[95]  It points to testimony from the former warden at FMWCC and the PREA compliance manager that they knew of no prior incidents of sexual abuse in the chapel or chaplain's office during their tenures.[96]  These witnesses also testified at deposition that FWMCC's chapel has large windows that, in NDOC's view, enhance visibility and reduce the kind of isolation that would make abuse reasonably anticipatable.[97]  So NDOC contends that to find the PREA materials alone sufficient to overcome NRS 41.745(c) would turn the statute into a strict-liability one, when NRS 41.745(2) expressly says that "Nothing in this section imposes strict liability on an employer for any unforeseeable intentional act of an employee."[98]

---

[93] ECF No. 110 at 12–13.

[94] ECF No. 132 at 12–14; *see also* ECF No. 143-1 at 63:11–12 (Burse's deposition in which he states that he's "never been convicted of any crime.").

[95] *See* ECF No. 132 at 13.

[96] ECF No. 106-3 at 51–55 (Howell's deposition); ECF No. 106-4 at 15 (Peterson's deposition).

[97] ECF No. 106-3 at 40; ECF No. 106-4 at 15.

[98] ECF No. 110 at 13; *see* Nev. Rev. Stat. § 41.745(2).

But Flynn's foreseeability showing has more texture than NDOC's general-awareness characterization suggests, and it is not limited to abstract training slides untethered to FWMCC's practices. NDOC's PREA materials warned staff that sexual violence may occur in chapels, isolated areas, and other under-supervised spaces,[99] and it instructed staff to deter and detect abuse by reporting unusual or suspicious behavior[100] and paying attention to staffing shortages and blind spots.[101] Flynn also points to NDOC's 2020 PREA annual report, which reflected 135 staff-on-inmate sexual-abuse allegations system-wide in the three years preceding her assault,[102] including 20 at FMWCC.[103]

While the training slides and aggregate allegation counts do not alone establish that Burse's assaults were reasonably anticipatable, Flynn argues that NDOC's custom and practice of ignoring the rules designed to mitigate such a risk did. She highlights Burse's deposition testimony that the chapel office was "off limits to all inmates" under NDOC procedures, yet he routinely met with inmates in that office anyway.[104] FMWCC correctional officers were "almost never" present, and supervisors—including associate wardens, wardens, lieutenants, and sergeants—came into his office while inmates were there without saying "one single, solitary word."[105]

---

[99] ECF No. 27-1 at 25.

[100] *Id.* at 21.

[101] *Id.* at 22.

[102] *Id.* at 8 (adding up all allegations including substantiated, unsubstantiated, and unfounded).

[103] ECF No. 106-11 at 13.

[104] *Id.*

[105] *Id.* at 39.

That testimony, Burse's background-check results, and NDOC's PREA materials are enough to create a genuine issue of fact about the customs and practices at the facility and raise doubts that NDOC could not have reasonably anticipated the probability of such an incident. Because reasonable jurors could draw competing inferences from this record, I deny both motions for summary judgment on Flynn's vicarious-liability theory. So Flynn's claims against NDOC for its vicarious liability for Burse's alleged battery, false imprisonment, and IIED will proceed to trial.

**C.    No party has demonstrated entitlement to summary judgment on Flynn's claim against Dzurenda.**

Flynn's second cause of action (and the last one to address here) is a deliberate-indifference-to safety claim against Dzurenda that is grounded in the Eighth Amendment and based on the theory that NDOC failed to protect her against Burse's sexual assault.[106] While it is clear from Flynn's amended complaint that she pled this claim against Dzurenda in his official capacity only, the parties' briefing fails to recognize this, so it focuses on the wrong legal standards. As a result, although both Flynn and Dzurenda ask for summary judgment on this claim, neither has carried their burden to show entitlement to judgment as a matter of law.

### 1.    *Dzurenda is sued in his official capacity only.*

Although the briefing on this claim appears to assume that Flynn is suing Dzurenda in his individual capacity, Flynn pled this claim against Dzurenda in his official capacity only.[107]

---

[106] ECF No. 27 at 11.

[107] Flynn also moves for summary judgment on a § 1983 deliberate-indifference claim against NDOC. The defendants argue that this claim fails because she never pled one. ECF No. 132 at 4–5. Indeed, the amended complaint contains no § 1983 claim against NDOC. *See generally* ECF No. 27. Nor could it. The State—and by extension NDOC as an arm of the State—is not a "person" subject to suit under § 1983. *See Doe v. Lawrence Livermore Nat. Lab.*, 131 F.3d 836, 839 (9th Cir. 1997); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

When screening the original complaint, which contained a claim against Dzurenda's predecessor Charles Daniels, I expressly noted that it was unclear at that time in what capacity Flynn intended to sue the director.[108]  Although that complaint's caption stated that she sued the director "in his official capacity," she also sought monetary relief from all defendants and argued that Daniels was not entitled to qualified immunity, suggesting that the director was being sued in his individual capacity.[109]  So I instructed Flynn to clarify in which capacity she intended to sue Daniels.  And because an official-capacity claim for prospective relief runs against the office,[110] I also advised that she should consider naming the current NDOC Director—the official who could implement any prospective relief she might obtain.

After getting leave to do so, Flynn apparently elected not to add individual-capacity allegations, and she eliminated the ambiguities I identified by suing the current director Dzurenda (and not Daniels) and making it clear that Dzurenda is being sued only in his official capacity.  The caption reflects this[111]:

> an individual; JAMES DZURENDA, director, in his
> official capacity; and Doe Nevada Department of

---

[108] ECF No. 26.

[109] *Id.* at 13–14.

[110] *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (explaining that "the real party in interest in an official-capacity suit is the governmental entity, not the named official," so the plaintiff must establish that a policy or custom of the governmental entity was the moving force behind the violation) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

[111] ECF No. 27 at 1.

and so does paragraph 4[112]:

> 4.      Defendant, JAMES DZURENDA, is, and was at all times relevant herein, a resident of the State of Nevada, and serves as the Director of the Nevada Department of Corrections. He is sued in his official capacity.

So it is clear that Flynn has sued Dzurenda in his official capacity only.  And while Flynn alleges in each of her claims against NDOC that she "suffered injury and damages,"[113] that language is absent from her claim against Dzurenda, suggesting that it is instead prospective injunctive relief that she seeks from him as the official who can carry it out.

### 2.      *Neither side has carried its summary-judgment burden on Flynn's official-capacity claim against Dzurenda.*

Because Flynn sues Dzurenda only in his official capacity and seeks prospective relief, this claim is "treated as a suit against the State."[114]  Flynn is thus not required to prove Dzurenda's personal participation in the underlying events.[115]  Instead, she must identify a challenged policy or practice as the constitutional violation and name an official who can appropriately respond to injunctive relief.[116]

The parties' briefing completely ignores this framework.  Instead, both sides largely talk past the issues that matter: they cite the wrong legal standards; argue prior conduct through an individual-capacity lens; and ignore the prospective-relief, deliberate-indifference standards and

---

[112] *Id*. at 3.

[113] *Id*. at 12–13

[114] *Hafer*, 502 U.S. at 25.

[115] *Hartmann v. California Dep't of Corr. & Rehab*., 707 F.3d 1114, 1127 (9th Cir. 2013).

[116] *Id*.

24

elements that control this claim.[117]  The net result is that the defendants do not carry their Rule 56 burden to identify the specific elements of Flynn's official-capacity, prospective-relief claim and then show what evidence is missing for those elements; and Flynn likewise does not meet her burden to affirmatively marshal evidence under the correct standard to prove entitlement to judgment as a matter of law on her own claim.  So both sides' requests for summary judgment on this claim against Dzurenda are denied.

**D.      The question of punitive damages against NDOC remains for the jury.**

NDOC lastly seeks summary judgment on Flynn's request for punitive damages against it, arguing that even if her claims survive, this record does not support such an award.[118]  "Punitive damages are awarded in the jury's discretion 'to punish [the defendant] for his outrageous conduct and to deter him and others like him from similar conduct in the future.'"[119]  A plaintiff seeking punitive damages must show by clear and convincing evidence that the

---

[117] ECF No. 106 at 12–17; ECF No. 132 at 4–7; ECF No. 110 at 13–15; ECF No. 122 at 6–8; ECF No. 135 at 2–5.

[118] Flynn's punitive-damages request has not been consistently presented.  Her amended complaint requests "punitive damages in an amount sufficient to punish Defendants and deter others from like behavior."  ECF No. 27 at 16.  In her summary-judgment motion, Flynn narrows that request to "punitive damages against Defendant Burse and any other individual defendant found to have acted with malice or reckless disregard, to the extent permitted by law."  ECF No. 106 at 23.  But in opposing the defendants' motion, Flynn suggests that punitive damages may also be available against NDOC.  ECF No. 122 at 8–9.  To the extent that Flynn seeks punitive damages against Dzurenda, they are unavailable because he is sued only in his official capacity, and official-capacity claims do not support an award of monetary relief.  *See Hafer*, 502 U.S. at 25, 27.  Because the parties both brief punitive damages as to NDOC, I address the issue.  But their briefing occasionally drifts into § 1983 terminology.  To be clear, Flynn does not sue NDOC under § 1983.  *See supra* note 107.  Her claims against NDOC sound only in Nevada tort law on a vicarious-liability theory.  This order does not address whether the law allows Flynn to recover punitive damages against NDOC, as no party raises that issue.

[119] *Smith v. Wade*, 461 U.S. 30, 54 (1983) (quoting Restatement (Second) of Torts § 908(1) (1977)).

25

defendant is "guilty of oppression, fraud,"[120] or "despicable conduct [that] is engaged in with a conscious disregard of the rights or safety of others."[121]  "Conscious disregard" means knowledge of the probable harmful consequences of a wrongful act and a willful and deliberate failure to act to avoid those consequences.[122]

NDOC argues that Flynn cannot make that showing because the PREA training, audits, and other preventative measures are proof that it took steps to deter sexual abuse; and it characterizes Flynn's showing as, at most, an argument that NDOC "should have done more," which is insufficient to submit punitive damages to a jury.[123]  Flynn responds that the record would allow a factfinder to conclude that NDOC maintained conditions that it knew created an unreasonable risk of staff-on-inmate sexual abuse—particularly in chapel spaces—and then failed to implement or enforce the safeguards that it knew were responsive to that risk.[124]

This record does not permit disposition of punitive damages on summary judgment. NDOC's request depends on accepting its characterization of the evidence—i.e., that its PREA policies and training demonstrate a reasonable preventative posture and that Burse's conduct was an unforeseeable, purely personal criminal act untethered to institutional practices.  I have already found that the record permits competing inferences on the key predicates of that theory. Flynn has produced evidence from which a reasonable jury could find that NDOC's chapel-area access and oversight practices departed from written controls in a way that created a predictable

---

[120] Nev. Rev. Stat. § 42.005.

[121] Nev. Rev. Stat. § 42.001(3).

[122] Nev. Rev. Stat. § 42.001(1); *see also Prestige of Beverly Hills, Inc. v. Weber*, 381 P.3d 652 (Nev. 2012) (unpublished).

[123] ECF No. 110 at 15–16.

[124] ECF No. 122 at 8–9.

opportunity for abuse; that NDOC had notice of risk indicators relevant to those conditions; and that the institution nonetheless tolerated or failed to correct the enforcement gap. If a jury credits Flynn's version of how the chapel-office rules operated in practice and what NDOC knew about risk and monitoring, it could also conclude that NDOC's conduct reflected the kind of conscious disregard required for punitive damages under Nevada's standard. Summary judgment on punitive damages is therefore not available on NDOC's arguments here.

### Conclusion

IT IS THEREFORE ORDERED that Flynn's motion for summary judgment **[ECF No. 106] is GRANTED in part. Flynn is entitled to summary judgment on her claims against Burse for sexual-assault, battery, and IIED.**

IT IS FURTHER ORDERED that the defendants' summary-judgment motion **[ECF No. 110] is DENIED.**

The following claims proceed to trial:

- Flynn's state-law false-imprisonment claim against Burse (half of the fourth cause of action);

- Flynn's vicarious-liability claims against NDOC (half of the third, fourth, and fifth causes of action); and

- Flynn's official-capacity § 1983 failure-to-protect claim against Dzurenda (second cause of action).[125]

---

[125] Prior to trial, the court will require the parties to brief the issue of what issues regarding this claim, if any, require a jury trial rather than a bench trial, in light of this claim's equitable nature.

But first, IT IS ORDERED that **this case is REFERRED to the magistrate judge for a mandatory settlement conference**.  **The parties' obligation to file a joint pretrial order is STAYED** until 30 days after that settlement conference.

_____
U.S. District Judge Jennifer A. Dorsey
March 18, 2026

28